LAW OFFICES OF
# ERIC DINNOCENZO

469 Seventh Avenue
Suite 1215
New York, NY 10018

Telephone: (212) 933-1675
Fax: (212) 249-5624
E-mail: eric@dinnocenzolaw.com
Website: www.dinnocenzolaw.com

New Jersey (By Appt. Only)
1199 Route 22 East
Mountainside, NJ 07092

July 8, 2016

Hon. Katherine Polk Failla
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    Miriam Jorge v. Tower Ins. of NY, et al.
              16-cv-1905 (KPF)

Dear Judge Failla:

      Plaintiff submits this letter motion seeking discovery in this ERISA long-term disability case. The discovery sought is reasonable in scope, as it only includes 6 written discovery requests and 2 depositions, and is necessary because defendant Standard Life Insurance Company ("Standard") is operating under a conflict of interest which needs to be explored so the Court can properly weigh it in its ultimate analysis.

**Legal authority**

      The Supreme Court decision of *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008) marks a significant development in ERISA jurisprudence, holding that courts should weigh conflicts of interest—defined as when the plan administrator both evaluates claims for benefits and pays benefits—as a factor in reviewing an ERISA benefits determination. Courts in the Second Circuit have regularly allowed discovery beyond the administrative record. It is undisputed that defendant Standard is operating under this type of conflict.

      An early post-*Glenn* decision from this Court allowing discovery in an ERISA benefits case, and in fact acknowledging that *Glenn* provides for enhanced discovery rights, was authored by Judge Kaplan in *Hogan-Cross v. Metropolitan Life Insurance Company*, 568 F. Supp. 2d 410 (S.D.N.Y. 2008). Judge Kaplan emphasized that allowing discovery into the potential bias of insurance companies in their benefits determinations can aid courts in reviewing their decisions. Notably, he observed that "not all conflicts are created equal"—meaning, Courts should not simply acknowledge that there is a conflict and move on from there, but rather, discovery is required to ascertain the exact nature and extent of the conflict, i.e. how deep it runs and how much it affected the benefits determination. Importantly, Judge Kaplan did not require any

threshold showing from the plaintiff in order to be granted discovery, labeling as "misguided" MetLife's argument that discovery was not warranted because there was no evidence of an actual conflict in the administrative record. Rather, he stated that, "The question here, as in all cases, is whether the discovery sought is relevant in itself or appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 414.

Five years later, in a decision from Judge Engelmayer, *Tretola v. First Unum Ins. Co.*, 2013 U.S. Dist. LEXIS 84003, at *2, 13-cv-231 (S.D.N.Y. June 13, 2013) (quotation omitted), discovery was granted with respect to the insurer's conflict of interest in order for the Court "to appropriately weigh that conflict in its ultimate merits review." *Id.* at * 4-6. Specifically, discovery was permitted in the form of document discovery and three depositions, reserving the right for plaintiff to later seek merits discovery. Of note, it does not appear that Judge Engelmayer specifically required a threshold showing by plaintiff aside from the actual existence of a conflict of interest for there to be a grant of discovery.[1]

### Evidence that the conflict has influenced Standard

Even though plaintiff is without the benefit of discovery, and even though she contends that a showing of actual bias is not required in order to obtain a grant of discovery, there is nonetheless, at this early stage, substantial evidence that Standard has administered the claim in a biased manner. Below is a non-exhaustive list of these instances.[2]

First, Standard maintains that when it started paying benefits, it believed that Mrs. Jorge was disabled from light duty work (erroneously classifying her position as Senior Liability Adjuster as light duty), but not from sedentary work. Accordingly, after two years passed under the "own occupation" standard, it denied her claim on the grounds that she was able to work in "any occupation." (Exhibit A). Nevertheless, it offered her assistance to apply for Social

---

[1] Plaintiff acknowledges that there is a second line of cases that require a showing of a "reasonable chance" that discovery beyond the administrative record will provide evidence that will later be admitted under the "good cause" standard. *See Mergel v. Prudential Life Ins.*, 2009 U.S. Dist. LEXIS 85594, at *4, 09-CV-39 (S.D.N.Y. Sept. 1, 2009). This standard was applied, for instance, in *McDonnell v. First Unum Life Ins. Co.*, 2011 U.S. Dist. LEXIS 127290, 10-cv-8140 (S.D.N.Y. Nov. 3, 2011) which ultimately allowed discovery based on claims that the insurer made strained interpretations of medical records and unjustifiably ignored opinions of treating doctors. To be clear, the "reasonable chance" standard for discovery is not to be confused with the "good cause" standard for a Court to evaluate information outside of the administrative record. *See Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 230 (E.D.N.Y. 2008) (quotation omitted) ("If a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery").

[2] The list is non-exhaustive so that plaintiff stays within the 5-page limit for this letter motion. Plaintiff did not provide supporting documentation for all her factual allegations, except for the March 4, 2015 denial letter (Ex. A), Plaintiff's appeal letter (Ex. B), the Nov. 4, 2015 denial of the appeal (Ex. C), the report of Dr. Semble (Ex. D), and the supplemental report from Dr. Leone (Ex. E), because doing so (such as appending the 1600 page administrative record) would dwarf this letter. Plaintiff can provide factual support for all her allegations and asks for the opportunity to provide supporting documentation if the failure to do so will prejudice her.

Security disability benefits,[3] even though the standard for obtaining these benefits is very broadly defined as the "inability to engage in any substantial gainful activity." Section 223(d) of the Social Security Act (42 U.S.C. § 423(d)(1)(A)). If Mrs. Jorge is disabled from light duty work, but can perform sedentary work, it is evident that she would not be disabled to receive Social Security. Standard offered assistance to Mrs. Jorge not out of altruistic motives, but instead because Social Security benefits would be a collateral source of income that would reduce the amount of disability payments Standard made. This factor warrants conflict discovery in this case because it respectfully reveals duplicitous actions by Standard in the administration of the claim with the goal of obtaining a financial benefit. *See Glenn*, 554 U.S. at 118. Of note, that Mrs. Jorge was awarded Social Security Disability was cursorily mentioned, but not addressed by Standard in its denial letter.[4] (Ex. A).

Second, Standard ultimately denied benefits after two years passed based on the false distinction that, while Mrs. Jorge is unable to work as a Senior Liability Adjuster for Tower, she can work as a Claim Examiner or Claim Supervisor. However, *all three positions have the same exact physical requirements*. (Ex. B). During the appeal process, when it was called out by plaintiff for this untenable position, Standard back-tracked from it, though it justified its action for having followed classifications set forth in the Dictionary of Occupational Titles that for unknown reasons categorized Senior Liability Adjuster as being light duty. (Ex. D). But Standard is an insurance company and is quite familiar with the roles of insurance adjusters. Although it had special knowledge of positions in the insurance industry, it hinged onto this difference without reflection because it was for its financial benefit. By analogy, it would be similar to a major law firm saying that an attorney was physically capable of working as a tax associate but not a trust-and-estates associate. Standard defends itself by saying, if we had known her position was not really light duty, we would have never paid benefits and so she benefited from this mistake. But this misses the point, which is that Standard reflexively grasps onto whatever is immediately available to it in order to deny claims, without engaging in meaningful analysis.

Third, Standard based its decision on the opinion of a hired consultant, Richard Semble, M.D., who did not examine Mrs. Jorge and whose actual conclusions span the entirety of only three sentences, and are contained in a form document provided by Standard. (Ex. D). He made no express finding as to whether she can work, but states that she can "sit continuously, stand and walk occasionally," failing to include any reasoning in support of his findings. Of special significance, the definition or criteria for sedentary work relied upon by a Standard vocational consultant in this case is, in relevant part (see Ex. A):

---

[3] A January 2, 2013 internal note from Tania Gougler, an adjuster, states that she told Mrs. Jorge that Standard could offer her assistance with the application. A June 21, 2013 email from Ms. Gougler states that "She was not interested in Allsup assistance…" Allsup advertises itself as a company that assists claimants in obtaining SSA benefits. Yet, meanwhile, an April 11, 2013 letter from Standard to Mrs. Jorge informed her that she was not eligible for a waiver of premium because she did not meet the definition of Totally Disabled. This is completely inconsistent conduct on the part of Standard.

[4] Numerous courts have held that the insurer should consider the SSA's finding of disability. *See e.g., Kirwan v. Marriott Corp.,* 10 F.3d 784 (11th Cir. 1994); *Pierce v. American Waterworks Co., Inc.*, 683 F. Supp. 996, 1000 (W.D.Pa. 1988).

> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

It is suggested that Dr. Semble was well aware that by writing that she could walk and stand occasionally, he was setting the stage for Standard to take the position that Mrs. Jorge could return to working at least a sedentary position—all that is required to deny benefits after two years—and that he did not coincidentally mimic the definition of "sedentary." In addition, Dr. Semble completely ignored and disregarded the opinion of the treating surgeon. "Plan administrators … may not refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Magee v. Metro. Life Ins. Co., 632 F. Supp. 2d 308, 321 (S.D.N.Y. 2009) quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965 (2003). In a November 8, 2013 evaluation, Dr. Leone stated that during an 8-hour work day, Mrs. Jorge could cumulatively sit for 2 hours or less and stand and/or walk for 2 hours or less. Dr. Leone has consistently assessed Mrs. Jorge to be disabled from work. Dr. Semble rejected these opinions without even addressing them.

While Dr. Semble only acknowledged "subjective" complaints of radiculopathy, he still did not consider it in his analysis. However, it is well established that subjective pain should be credited. See Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 136 (2d Cir. 2001) (quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)) ("the subjective element of pain is an important factor to be considered in determining disability."). Moreover, he rejected without any basis Dr. Leone's opinion that the radiculopathy was permanent, reflected in many places including a November 21, 2012 note: "It would appear that the radiculopathy is permanent."[5]

Fourth, in the appeal process, as it was required to do, Standard had another non-examining consultant, John Hart, D.O., an osteopath who is not a surgeon, review the record, and he supported the denial with new reasons not previously raised. (Ex. D, p. 11). In addition, the denial of the appeal incorporated a June 11, 2013 Physician Consultant review from two years earlier performed in the context of a denial of Mrs. Jorge's request for a waiver of premium for her life insurance policy that was not made a part of the initial denial. (Ex. D, p. 10). Seeing that plaintiff had proven its initial reasons for denial to be meritless, Standard proceeded to get new and different opinions to deny the claim. When plaintiff submitted a letter from Dr. Leone rebutting these two reviews, Standard would not consider it. (Ex. E). Again, this weighs in favor of conflict discovery.

Fifth, Standard did not consider whether the alternate occupations of Claim Examiner or Claim Supervisor that it says Mrs. Jorge could work in are available in the Long Island region, how many positions are available, or whether Mrs. Jorge at age 60 could even obtain such a position. *See Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208 (2d Cir. 2006) (denial

---

[5] Of note, another reported decision reveals that Standard has utilized the services of Dr. Semble in the past. *See Graves v. Standard*, 2015 U.S. Dist. LEXIS 66894 (W.D Ky. May 21 2015) (Dr. Semble found the insured could work in a sedentary position after undergoing a cervical fusion). Perhaps there is a reason why Standard chooses Dr. Semble to perform reviews, why he uses a form provided by Standard, and why he has no need to actually examine the insured. Plaintiff should be granted discovery to explore whether Dr. Semble is influenced to provide certain types of opinions.

of LTD benefits was arbitrary where insurer, although it found the 55-year-old insured to be physically capable of sedentary work, did not consider whether she could in fact find such work).

**Discovery requests**

The items of discovery sought are reasonably limited to the following and are followed in parenthesis by cases authorizing, either in whole or in part, the particular discovery:

1. INT 1: The number of cases that Standard sent to Drs. Semble and Hart from 2012 to the present; the number of cases in which they found the insured either (a) disabled or non-disabled, or (b) indicate the insured is functionally able to work in a sedentary job or better; and the payment made by Standard to each doctor for each case. *See Hogan-Cross*, 568 F. Supp. 2d 410 (S.D.N.Y. 2008); *Burgio*, 253 F.R.D. at 233.

2. INT 2: The statistical rate of claims paid vs. claims denied vs. claims initially paid that were later denied after the two year "own occupation" period passes and transitions to an "any occupation" standard from 2012 to present. *See Hogan-Cross*, 568 F. Supp. 2d at 414 (S.D.N.Y. 2008).

3. INT 3: Statistics concerning the payment and denial of benefits determinations for Tower employees from 2012 to present.[6] *McDonnell v. First Unum Life Ins. Co.*, 2011 U.S. Dist. LEXIS 127290, 10-cv-8140 (S.D.N.Y. Nov. 3, 2011).

4. DOC 1: The contracts between Standard and Drs. Semble and Hart. *See Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 722 (S.D.N.Y. 2007).

5. DOC 2: Standard's guidelines, manuals, directives, and memos in effect when the instant claim was denied concerning how to evaluate claims and medical information.

6. DOC 3: Performance evaluations and bonus/compensation of persons who evaluated the claim and the basis for them from 2012 to present. *See McDonnell*, 2011 U.S. Dist. LEXIS 127290, at *15-16; *Burgio*, 253 F.R.D. at 234.

7. Deposition of the Standard employee who made the decision to deny the claim. *See McDonnell*, 2011 U.S. Dist. LEXIS 127290, at *14; *Burgio*, 253 F.R.D. at 235.

8. Leave to issue a subpoena for the deposition of Dr. Semble.[7] *See Burgio*, 253 F.R.D at 236.

Thank you for your consideration of this letter.

---

[6] The grounds for this request is that Mrs. Jorge's employer, Tower, is no longer in business and, upon information and belief, this may give Standard the incentive not to pay claims if Tower is no longer a customer.

[7] The depositions of Standard and Dr. Semble can easily be taken because both are located in the Southern District (Standard's headquarters are located in White Plains, New York and Dr. Semble's office is located in Orangeburg, NY).

Respectfully,

*s/Eric Dinnocenzo*

Eric Dinnocenzo